## MINIMUM WAGE BOARD OF PUERTO RICO v. LUCE & CO., S. EN C.

### No. 3989.

Circuit Court of Appeals, First Circuit.

May 22, 1946.

Paul A. Sweeney, Atty., Department of Justice, of Washington, D. C. (John F. Sonnett, Asst. Atty. Gen., David L. Kreeger, Sp. Asst. to Atty. Gen., Warner Gardner, Sol., Department of Interior, Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of Interior, and Shirley Ecker Boskey, Atty., Department of Interior, all of Washington, D. C., and Ismael Soldevila, General Counsel, Minimum Wage Board of Puerto Rico, of San Juan, Puerto Rico, on the brief), for appellant.

John T. Noonan, of Boston, Mass. (William J. Hession, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

The appeal in the instant case is taken from that portion of a judgment of the Supreme Court of Puerto Rico, entered on

September 23, 1943, which set aside decree No. 2 issued on February 27, 1943, by the Minimum Wage Board of Puerto Rico. After full consideration we have concluded that the Supreme Court of Puerto Rico was not "inescapably wrong" in holding, as a matter of statutory construction, that the Minimum Wage Act of April 5, 1941, as amended on April 23, 1942, by Act No. 44, did not apply "to contracts for services entered into and executed" before the effective date of the said amendment. It thus becomes unnecessary for us to decide various other issues which would have been presented had we taken a contrary view on the construction of the statute.

Act No. 8, approved April 5, 1941, Laws P.R.1941, p. 302, created the Minimum Wage Board of Puerto Rico. The board is charged with the duty of studying the wages, working hours, and labor conditions which prevail in the different occupations, businesses, and industries in Puerto Rico, and of making investigations regarding the health, safety, and well-being of the workers. Whenever the wages paid in any occupation, business, or industry are insufficient to satisfy the normal needs of workers and are detrimental to the maintenance of the minimum standard of living necessary for their health, efficiency, and general well-being, it becomes the duty of the board to appoint a Minimum Wage Committee to investigate the labor conditions prevailing in such occupation, business, or industry, and within a period of three months to report to the board its findings with reference to the minimum wages, the number of working hours, and the labor conditions, indispensable to the maintenance of the health, safety, and general well-being of the workers in such occupation, business, or industry. On the basis of the report by such Minimum Wage Committee, and after a public hearing, the board is empowered to prescribe minimum wages, maximum working hours, and labor conditions by mandatory decree effective sixty days after its promulgation. Violation of the terms of such mandatory decree becomes a misdemeanor subject to punishment by fine or imprisonment. Any person aggrieved by a decree of the board may, within twenty days after promulgation of such decree, apply to the board for reconsideration. A review of the final decision rendered by the board may be obtained in the Supreme Court of Puerto Rico within fifteen days after the service thereof, and the court may affirm or set aside the decision of the board.

In January and February of 1942, a serious strike took place in the Puerto Rican sugar industry. Representatives of the insular government intervened, and the men went back to work on February 16, 1942.

There had been delay in the organization of the Minimum Wage Board, which did not hold its inaugural session until February 9, 1942, while the strike was still pending. At its first ordinary session, on February 11, 1942, the board resolved to make a study of the sugar cane industry for the purpose of regulating minimum wages, hours of work and working conditions.

Shortly after the termination of the strike, an amendment was made to the Minimum Wage Act by Act No. 44, approved April 23, 1942, Laws P.R.1942, p. 476. Since the Act was not passed by a vote of two thirds of all the members elected to each house, it did not become effective until ninety days thereafter, that is, on July 23, 1942, as provided in § 34 of the Organic Act, 39 Stat. 961, 48 U.S.C.A. § 825. The pertinent portions of Act No. 44 are as follows:

"Section 1.—Statement of Motives.— Without prejudice to the sacred right of striking, which belongs to workmen in order to better their living or working conditions, it is advisable and necessary to insure the permanence of industrial activities in Puerto Rico and to prevent the workmen from leaving their work when controversies arise between them and their employers in regard to wages, which controversies may be solved through the prompt fixing of reasonable wages. For such purpose, it is the duty of the State to determine proceedings which, guaranteeing to the workmen their right to claim better compensation, permit them to continue receiving the means indispensable for meet-

ing their needs, and permit the industry to continue using the services of such workmen until their claims are aired. In times of emergency, when the uninterrupted activity of all industries is still more necessary, the establishment of special proceedings for the prompt fixing of wages, which, being applied in some cases with a retroactive effect, thus avoid the stoppage of the industry or the temporary deprivation of the workmen of their means of livelihood, is made more advisable.

"Section 2.—A new section numbered 10-A is hereby added to Act No. 8, * * * which section shall read as follows:

"Section 10-A.—Notwithstanding the provisions of other sections of this Act, the Governor of Puerto Rico, through a proclamation for that purpose, may require at any time that the Minimum Wage Board appoint a Minimum Wage Committee to investigate the working conditions prevailing in a certain occupation, business, or industry, where there exists or has existed within the six (6) months preceding the date of the Governor's proclamation, a state of strike, lockout, emergency, or controversy between workmen and employers, in regard to wages, and fix the minimum wages that shall be paid in the occupation, business, or industry in question.

"The Governor, on issuing the proclamation provided for in this section, shall set forth that the wages that the board may fix shall have retroactive effect to the date on which the laborers returned, or may return, to work. * * *

"(b) That the mandatory decree which the board shall issue, in accordance with Section 10 of this Act, shall be effective immediately and shall also have retroactive effect, as to the wages fixed, to the date on which the laborers in the industry in question returned, or may return, to work, if that act occurred prior to the promulgation of the decree of the board. The board shall determine the date of the return of the laborers to their work."

Purporting to act under the authority of the new Section 10-A, the governor on July 29, 1942, issued the following proclamation:

"By the Governor of Puerto Rico
A Proclamation.
Directing the Minimum Wage Board
to fix Minimum Wages for the
Sugar Industry.

Whereas, It is of public knowledge that at the commencement of the sugar grinding season of this year in Puerto Rico and during the second fortnight of January and the first one of February, 1942, a large part of the laborers engaged in the sugar industry were on strike, and

Whereas, The said laborers returned to their work on the understanding that the Minimum Wage Board was to study the sugar industry of Puerto Rico and fix proper minimum wages,

Now, therefore, I, R. G. Tugwell, Governor of Puerto Rico, pursuant to the authority vested in me by Section 10-A of Act No. 8 of April 5, 1941 as amended by Act 44, approved April 23, 1942, do hereby require the Minimum Wage Board to appoint a Minimum Wage Committee to investigate labor conditions existing in the sugar industry of Puerto Rico so that the Board may fix the minimum wages that should be paid to the employees of said industry.

The wages fixed by the Board, in due course and in accordance with the provisions of Section 10-A of the above mentioned Act, shall have retroactive effect to the date on which the laborers who were on strike returned to their work, said date to be determined by the Board.

In witness whereof, I have hereunto set my hand and caused to be affixed the Great Seal of Puerto Rico at the City of San Juan, this 29th day of July A.D., nineteen hundred and forty-two.
(Seal)         R. G. Tugwell, Governor."

On August 14, 1942, the Minimum Wage Board appointed a Minimum Wage Committee for the sugar industry as required by the terms of the governor's proclamation. The board decided that the members of the committee so appointed should act and proceed also as a separate committee under § 6 of the original Act, pursuant to which a prospective mandatory decree

might be issued prescribing minimum wages, maximum hours, and working conditions; and accordingly, on August 21, 1942, appointed said members as such separate committee.

The committee, in its dual capacity, conducted hearings during August and September, 1942, and submitted its recommendations to the Minimum Wage Board. The first recommendation dealt with the minimum wages which should be paid in the sugar industry from February 16, 1942, the date on which the workers had returned to work; the second dealt with the minimum wages which should be paid and the maximum hours and labor conditions which should obtain in the future.

After receipt of these recommendations from the committee, the Minimum Wage Board held public hearings between November 25 and December 18, 1942, at which hearings the present appellee appeared and participated. At the conclusion of the hearings the board issued two orders, known respectively as decree No. 2 and decree No. 3. Decree No. 3, which was prospective in its operation and did not derive its statutory authority from the new Section 10-A, fixed the minimum wage for workers in the sugar industry prospectively, and prescribed certain working conditions. Decree No. 2, which was issued pursuant to Section 10-A, prescribed minimum wage rates for workers in the agricultural and industrial phases of the sugar industry, and directed that such wages be paid to the workers retroactively to February 16, 1942, the "date when the workmen who were on strike returned to their work." Appellee filed with the board a petition for reconsideration of both decrees, setting forth that they were in excess of the board's authority on several enumerated grounds. After a hearing thereon, the petition for reconsideration was disallowed by the board.

Thereafter, appellee duly filed its petition in the Supreme Court of Puerto Rico, under § 24 of the Minimum Wage Act, seeking review of mandatory decrees Nos. 2 and 3. That court upheld the validity of decree No. 3, and this phase of the litigation is not now before us. We are, however, concerned with decree No. 2, which was held invalid as beyond the competence of the Minimum Wage Board on the ground that the provisions of Section 10-A were not, as a matter of statutory construction, retroactively applicable to a strike which had ended before the enactment of Act No. 44. In this connection the court below said:

"It is a universal principle of law, embodied in Section 3 of the Civil Code, that civil statutes of a substantive nature shall not have a retroactive effect unless they expressly so provide, and even then, in no case shall they prejudice rights acquired under the provisions of prior legislation.

"If Section 10-A which we are discussing is examined, it will be readily seen that it fails to provide, either expressly or even impliedly, that it should have a retroactive effect. On the contrary, the pertinent part of the statement of motives, as well as the purposes of the law itself, clearly show that such was not the intention of the lawmaker. The evident purpose of the law, as the same appears from the statement of motives, is to prevent laborers from leaving their work while their claims are pending determination, thus depriving themselves of the means indispensable to provide for their needs, while at the same time they paralyze the industry by depriving it of their labor. Such being the purpose of the law, it is easy to understand that its provisions can have no application to a situation which it is unnecessary to prevent, nor could it be prevented, because it had come to an end long before the act itself went into effect."

Board's Exhibit 22 is a book edited as an official publication by "Government of Puerto Rico—Minimum Wage Board—Division of Researches and Statistics". In this book the following statement appears: "The strike of the cane workers affiliated with the General Confederation of Workmen of Puerto Rico produced a stoppage in the sugar industry, which started on January 19, 1942. It ended when the workmen returned to their jobs on February 16, with the understanding that the Minimum Wage Board would make as soon as possible a study of the sugar industry in

order to fix adequate minimum wages and that the Minimum Wage Act would be amended to make the wages set by the Board retroactive to the date of the return of the workmen to their jobs."

The record also contains extracts from the official publication "Minutes of the Senate of Puerto Rico, Fifteenth Legislature, Second Regular Session, 1942", giving statements made on the floor of the Senate by the majority and minority floor leaders just after the vote had been taken on the final passage of the amendatory bill. Appellant insists that these statements disclose an understanding on the part of these two senators that Act 44 was intended to apply retroactively to the strike in the sugar industry which had terminated on the previous February 16. These statements seem to us to be somewhat inconclusive.

Appellant has also submitted to us, in the form of an appendix to its reply brief, various excerpts from a newspaper published in San Juan designed to show that as a matter of common knowledge, of which this court might take judicial notice, the workers had been induced to terminate their strike in the sugar industry on February 16, 1942, on the strength of assurances by the president of the Senate that he would endeavor to have the Minimum Wage Act amended so as to empower the board to prescribe minimum wages in the sugar industry retroactive to the date the men returned to work. Appellee objects to our reception and consideration of this material; but in the view we take the point is unimportant. If such assurances were given to the workmen on strike, they could not, of course, bind the legislature as to its future action. Incidentally, appellant's assertion as to the nature of the assurances which brought the particular strike to an end is not borne out by the recital in the governor's proclamation, which merely stated: "The said laborers returned to their work on the understanding that the Minimum Wage Board was to study the sugar industry of Puerto Rico and fix proper minimum wages".

■ In ascertaining the intention of the legislature, the Supreme Court of Puerto Rico excluded from consideration everything outside the text of Act 44 itself. This it was at liberty to do, for the Supreme Court of the United States has emphasized as a cardinal principle of review in appeals involving the interpretation of local legislation "that the mere fact that our own system of law and statutory construction would call for the application of one rule to a given set of facts, does not preclude the adoption of a different one by the insular courts." De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 455, 64 S.Ct. 1121, 1123, 88 L.Ed. 1384. In addition to that, the view of the Supreme Court of Puerto Rico as to the canon of construction applicable here is fortified by the provision in § 3 of the Civil Code of Puerto Rico (1930 Ed.) that "Laws shall not have a retroactive effect unless they expressly so decree."

■ Quite obviously the construction of Act 44 urged by appellant, and rejected by the court below, would involve giving Act 44 a retroactive effect. It would mean that an Act passed April 23, 1942, and not effective until July 23, 1942, empowered the Minimum Wage Board to impose upon employers in the sugar industry an obligation to pay additional compensation to their workers for services rendered from and after February 16, 1942, thus affecting contracts of employment already performed before the Act was passed. Whether the legislature might constitutionally have done this we need not now inquire, but we cannot say that the court below manifestly erred in concluding that the language of Act 44 contains no clear expression of such legislative purpose, in the absence of which the Act should be taken as having a prospective operation only.

Act 44 does indeed specifically provide that retroactive effect shall be given to minimum wage decrees of the board issued under Section 10-A. That is, when Act 44 becomes effective, if a strike thereafter occurs and the men later return to work, a wage decree under Section 10-A may be promulgated with retroactive effect to the date on which the strike terminated. But this is not to say that Act 44 itself is to be effective retroactively so as to authorize the fixing of minimum wages for services

that had already been rendered prior to the passage of the Act.

As applied prospectively, in accordance with the construction adopted by the court below, Act 44 is intelligible legislation fully accomplishing the purpose set forth by the legislature in its formal Statement of Motives. In the future, if a strike occurs of such importance as to justify the governor in invoking the provisions of Section 10-A, the men can be persuaded to go back to work upon the assurance of the governor that he will by proclamation require the Minimum Wage Board to proceed under Section 10-A, with the result that the eventual minimum wage order issued by the board in an accelerated proceeding will be retroactive to the date the men returned to work.

Appellant also contends that Act 44 on its face does expressly authorize retroactive application of a minimum wage order to services already rendered before the Act was passed, in that the governor's proclamation of July 29, 1942, invoking the provisions of Section 10-A, was authorized by the literal language of that section. That section authorizes such action by the governor "where there exists or has existed within the six (6) months preceding the date of the Governor's proclamation, a state of strike, * * * in regard to wages. * * *" Since the strike in the sugar industry did not end until February 16, 1942, it can be said that a "state of strike" in the particular industry existed within six months preceding the date of the governor's proclamation. But on the face of Act 44, it does not appear to be ad hoc legislation. Rather, it is general legislation amending the permanent structure of the Minimum Wage Act so as to afford an orderly method of dealing with acute strike situations which may occur in the future. Section 10-A does not expressly state that it shall apply retroactively to strikes which had already terminated. In the absence of some indication to that effect, in unmistakable terms, the court below was at liberty to construe the six-months provision as referring to strikes which might occur after the passage of the Act. To borrow a phrase from one of our earlier opinions, we would need a touch of arrogance to be able to say that the unanimous decision of the court below as to the meaning of Act No. 44 was "inescapably wrong".

The judgment of the Supreme Court of Puerto Rico is affirmed.