Arturo FORNARIS, Jr., Plaintiff,
Appellee,

v.

The RIDGE TOOL CO. et al., Defendants,
Appellants,

and

The Commonwealth of Puerto Rico,
Intervenor.

No. 7422.

United States Court of Appeals,
First Circuit.

Submitted Nov. 17, 1969.

Decided March 17, 1970.

Edward M. Borges and O'Neill & Borges, Santurce, P. R., on brief for appellants.

Francisco de Jesus Schuck and Fiddler, Gonzalez & Rodriguez, San Juan, P. R., on brief for appellee.

Gilberto Gierbolini, Solicitor Gen., and Ida Cardona-Hernandez de Orenstein, Asst. Solicitor Gen., on brief for Commonwealth of Puerto Rico, intervenor.

Eduardo Negrón Rodríguez and Baragano, Trias, Saldana & Francis, Hato Rey, P. R., on brief for appellant in No. 6876.

Joseph T. Wynne and McConnell, Valdes, Kelley & Sifre, San Juan, P. R., on brief for appellee in No. 6876.

Rafael A. Rivera Cruz, Solicitor Gen., and Peter Ortiz, Asst. Solicitor Gen., on brief for Commonwealth of Puerto Rico, intervenor in No. 6876.

Sutton Keany, McConnell, Valdes, Kelly & Sifre, San Juan, P. R., Merrell E. Clark, Jr., Terrence H. Benbow, Robert W. Gray, and Winthrop, Stimson, Putnam & Roberts, New York City, on joint brief of appellee and Bristol-Myers Company and others, amici curiae in No. 6876.

Edward M. Borges, O'Neill & Borges, Santurce, P. R., and Baker & McKenzie, Philip A. Ryan, Washington, D. C., on brief for Economics Laboratory, Inc., and others, amici curiae in No. 6876.

Thomas V. Koykka, Edward D. Crocker, Walter A. Bates, William W. Taft and Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, on brief for Eaton Yale & Towne, Inc., amicus curiae in No. 6876.

Stanley L. Feldstein, Salvador Antonetti Zequeira and Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., on brief for La Electronica, Inc., and others, amici curiae in No. 6876.

Arturo Estrella, San Juan, P. R., and Baragano, Trias, Saldana & Francis, Hato Rey, P. R., on brief for Felix A. Rodriguez, Inc., amicus curiae in No. 6876.

Mariano Canales Delgado and McConnie, Canales & Ferrer, San Juan, P. R., on brief for Carlos M. Ruiz, amicus curiae in No. 6876.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

On June 24, 1964 the Puerto Rico legislature enacted the so-called Dealer's Contract Law known as Law 75. 1964 Laws of Puerto Rico, 4th Sess., at 231 (approved June 24, 1964). Its exact terms we will come to presently, but in effect this statute provided that a Puerto Rico dealer's contract with a "principal," hereinafter manufacturer, regardless of its provisions for termination was, with certain exceptions, renewable indefinitely at the option of the dealer, and imposed substantial damages upon a manufacturer who refused to accede. On June 23, 1966 the scope of the obligation was enlarged to forbid the manufacturer from performing, irrespective of the provisions of the contract, "any act detrimental to the established relationship." 10 L.P.R.A. § 278a (1968 supp.). In spite of this legislation a number of

manufacturers acted to terminate or otherwise change their dealers' agreements, and much litigation has ensued. Because of diversity of citizenship the bulk, apparently, of the cases were removed to the district court, where the defendants raised constitutional and other defenses. The court resolved these defenses in the plaintiff's favor in Ruiz v. Economics Laboratory, Inc., D.P.R., 1967, 274 F.Supp. 14, and in the defendant's favor, in a more limited situation, in United Medical Equipment Corp. v. S. Blickman, Inc., D.P.R., 1966, 260 F. Supp. 912. In the *Blickman* case the plaintiff appealed, and because of the great importance of the legislation we issued a general invitation for amicus briefs. Many were filed. We specially invited the Commonwealth to brief and argue the question of constitutionality, which it graciously did.

After argument, but before we had completed our opinion, the *Blickman* case (No. 6876) was settled, mooting the appeal. Thereafter we were asked to accept an interlocutory appeal in the present case pursuant to 28 U.S.C. § 1292(b). The parties did not request oral argument. By order we took the appeal on the briefs of the parties and transferred all earlier briefs, amicus and otherwise, filed in the *Blickman* case. We invited the Commonwealth to file a supplemental brief, which it has done. In addition, we have the benefit of the opinion of the Puerto Rico Superior Court in Construction Mach. & Supplies Corp. v. Construction Mach. Co., decided December 23, 1968, upholding the act's constitutionality.

In the present complaint plaintiff Fornaris, a citizen of Puerto Rico, alleges that for twenty-nine years he had been the exclusive distributor in Puerto Rico of merchandise manufactured by the defendant The Ridge Tool Company, an Ohio corporation; that on November 26, 1965, effective as of April 15, 1966, defendant "cancelled and/or terminated, without just cause the distributorship contract," contrary to the law of Puerto

Rico.[1] It is not alleged that the termination was contrary to the terms of the contract itself, and we assume that it was in accordance therewith, and that plaintiff's rights depend solely upon Law 75. Defendant moved to dismiss on the ground that this law is unconstitutional, stating various reasons therefor. The court denied the motion on the basis of its opinion in Ruiz v. Economics Laboratory, Inc., *supra*, and defendant appeals.

Before considering the precise terms of Law 75 it is pertinent to review the circumstances that led to its passage, and the declared purposes sought to be achieved. The legislature appended the following statement.

### "STATEMENT OF MOTIVES

"The Commonwealth of Puerto Rico can not remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaries [sic], or agents, as soon as these have created a favorable market and without taking into account their legitimate interests.

"The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power it deems it necessary to regulate, insofar as pertinent, the field of said relationship, so as to avoid the abuse caused by certain practices."

We take this statement to be a summary of, and to represent an adoption of, the unanimous Report of the Committee on Industry and Commerce recommending the act in the form that it was eventually passed. The committee stated that it proposed the law because terminating dealerships "as soon as these have created a favorable market for their products, frustrat[ed] the legitimate expectations and interests of those who have so efficiently fulfilled their responsibilities." [2] See, generally, 18 Diario de Sesiones, Asambla Legislativa (Camara), May 22, 1964, pp. 1723–25. With respect to the "reasonable stability in the dealer's relationship," further amplification is to be found in 34 Rev.Jur. de la U.P.R. 497, quoted at length in the *Construction Machinery* opinion. Briefly, it was felt that cutting off dealers, with the manufacturer establishing its own sales office or branches, leads to instability of local investments and to the export of profits. Conversely, if manufacturers can terminate with impunity, some may withdraw altogether. Some Puerto Rico branches are marginal compared with other branches in the United States, and consequently are the first to be closed in case of declining business, to Puerto Rico's detriment.

We have gone into this background supplied by the parties not only because it shows the purposes of the act, illuminating the propriety, or possibly, impropriety, of its provisions, but also because of the assistance it may give in resolving doubts as to the statutory meaning. Law 75 itself is relatively brief. A manufacturer may never terminate, regardless of the provisions of the contract, or refuse to renew the dealership on an agreed expiration date, except for "just cause." Law 75, § 2, 1964 Laws of Puerto Rico at 232 (approved June 24, 1964).[3] "Just cause" is legislatively defined as substantial failure of

---

1. This must have meant Law 75, as plaintiff's action was prior to the 1966 amendment. We do not, in this opinion, reach the amendment except to observe the obvious, that it presents many additional problems.

2. For this, and certain other quotations, we rely upon translations from the Spanish furnished by various parties and not contradicted.

3. "Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may terminate said relationship or refuse to renew said contract on its normal expiration, except for just cause."

performance by the dealer.[4] In case of breach of the statutorily imposed obligation, damages "shall be fixed on the basis"[5] of a specified list of items. Law 75, § 3. These are substantial, particularly with respect to awarding the dealer the entire good will value of the agency without inquiry or adjustment for what portion may have been due to the acts of the manufacturer, or even of prior dealers. To this figure is added, cumulatively the Commonwealth concedes, the amount of profits for the past five years. Law 75, § 3(d).[6] There is no provision for mitigation should it appear that the dealer had successfully transferred into an equally profitable line. Even apart from such lack of offsets, the award of both good will and loss of profits amounts to duplication. The parties are precluded from agreeing otherwise. Law 75 § 4.

 In upholding the constitutionality of the application of the act to the present defendant the district court, as did the superior court in the comparable case, relied upon the police power. There can be no question but that this power permits the legislature to remedy various economic evils. All courts recognize, however, that retrospective legislation, affecting established rights and relationships, presents an additional problem. While the legislature may prevent an employee willing to contract to work for a low wage from doing so, West Coast Hotel Co. v. Parrish, 1937, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, the retrospective imposition of a minimum wage would be quite a different matter. See Luce & Co. v. Minimum Wage Board, 1943, 62 P.R.R. 431, aff'd 1 Cir., 1946, 155 F.2d 983, where the court stated, in dictum, that a statute granting additional benefits for "services entered into and executed * * * before the same went into effect * * * would be unconstitutional, since it would deprive the employers of their property without due process of law." 62 P.R.R. at 449. We cannot agree with the many arguments, variously advanced, that the case at bar does not involve similar retrospectivity. If at the time that Law 75 was passed a manufacturer had contracts with dealers that he could terminate at will without liability, and thereafter, because in the opinion of the legislature such a result would deprive the dealers of their expectations based upon their having "so efficiently fulfilled their responsibilities" it must make substantial payments on termination, we can only regard this as increased payment for past services. Indeed, if it is not, it is an amendment of the contract to require an outright gratuity.

 We need not deal with a constitutional prohibition against impairing the obligation of contracts,[7] because the

4. "[J]ust cause: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." Law 75, § 1(d).

5. It was conceded during the oral argument of the *Blickman* case that the Spanish, "se fijara a base" is mandatory.

6. If the dealer has been in business less than five years, an appropriate multiple is provided to determine the equivalent of five years. It may be noted that the effect of this provision is exactly to contradict the declared reason for the act—that dealers are cut off "as soon as they have developed a favorable market." On that basis their past profits would be negligible. If, however, the dealer had not received this unfortunate treatment, but had been permitted a long, prosperous career to reward him for his entrepreneur services, then his award under this section would be substantial.

7. The argument goes that Puerto Rico is not subject to certain constitutional restrictions because not a "state." Cf. Buscaglia v. Ballester, 1 Cir., 1947, 162 F.2d 805. However, the Puerto Rico Constitution contains a provision comparable in this respect to the federal Bill of Rights. Puerto Rico Constitution Art. II, § 7. Since this provision might be said to have been imposed by Congress, see Act Mar. 2, 1917, c. 145, § 2, 39 Stat. 951, as amended, 41 Stat. 1096, 47 Stat. 158, 48 Stat. 361, 61 Stat. 772, repealed, ex-

due process clause of the federal constitution provides essentially the same restraint so far as retrospectivity is concerned.[8] We have no thought that Puerto Rico is in a more favored position in this respect than is a state or the federal government. Figueroa Ruiz v. Delgado, 1 Cir., 1966, 359 F.2d 718, 723–724, Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, 382. See 48 U.S.C. § 731d; Joint Resolution, 66 Stat. 327. (July 3, 1952). Hence only minor infringement of established contractual rights may be effected without just compensation. "Police power" is not a magic word that permits the legislature to adjust any and every found economic ill without payment.

In determining whether retroactive alteration of contractual provisions are sufficiently minor to be permissible a distinction is sometimes drawn between alteration of substantive rights and alteration of procedures or remedies. See Stockholders of Peoples Banking Co. of Smithsberg, Md. v. Sterling, 1937, 300 U.S. 175, 180–183, 57 S.Ct. 386, 81 L.Ed. 586 (alternative holding). However, even the latter may infringe constitutional rights, Hale, supra n. 8, at 533–557, W. B. Worthen Co. ex rel. Street Improv. Dist. v. Kavanaugh, 1935, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298, while the former can sometimes be tolerated if the effect is not too severe. El Paso v. Simmons, 1965, 379 U.S. 497, 503–508, 85 S.Ct. 577, 13 L.Ed.2d 446. Essentially, the question is, how drastically have property rights been affected, and, particularly, how great is the change viewed in the light of the reasonable expectations of the parties when the contract was entered into. See El Paso v. Simmons, supra; Home Bldg. & Loan Ass'n v. Blaisdell, 1934, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413. The distinction is one of degree. For example, emergency statutes allowing a tenant to stay beyond the term of his lease upon payment of reasonable rent have been upheld as reasonable alterations, Block v. Hirsh, 1921, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865; Marcus Brown Holding Co. v. Feldman, 1921, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877, whereas a statute which would have destroyed a mining company's reserved right to mine coal underneath land, the balance of which had been sold by it, has been invalidated as working a change of too great magnitude. Pennsylvania Coal Co. v. Mahon, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322. See generally Hochman, supra n. 8, at 711–17.

While we recognize a strong obligation to support legislative findings, the Report of the Committee on Industry and Commerce to the effect that the termination of dealerships in terms revocable at will was "frustrating the legitimate expectations" of the dealers cannot possibly be true. Dealers may have had hopes; they could have no legitimate expectation of non-terminable contracts. Cf. Castillo v. Smart Products, Inc., D. P.R., 1968, 289 F.Supp. 138. Sounding phrases, and calling the failure to make termination payments an "abuse," cannot change the fact that the manufacturer has been forced into heavy contractual obligations that it never assumed. No amount of research by parties or

cept for last paragraph, Act July 3, 1950, c. 446 § 5(1), 64 Stat. 320, an argument might be made in favor of the federal court's interpretative and enforcement powers by one route or another. By suggesting the question we do not suggest the answer.

8. "Although there is no clause expressly forbidding the federal government to pass laws impairing the obligation of contracts, any federal law impairing them in a manner which the Supreme Court deemed unreasonable would doubtless be held to be a deprivation of property without due process, contrary to the Fifth Amendment."
Hale, The Supreme Court and the Contract Clause: III, 57 Harv.L.Rev. 852, 890 (1944). Accord, Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L.Rev. 692, 695 (1960). Cf. Lynch v. United States, 1934, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434; Thorpe v. Housing Authority, 1969, 393 U.S. 268, 278–279, 89 S.Ct. 518, 21 L.Ed.2d 474, nn. 31–32.

amici has discovered a case suggesting that to convert a contractual relationship terminable by either party without cause into one which, short of breach by the other party, can be terminated by one of the parties only by making substantial payments and without protection for its economic interests, is not a change of great magnitude.[9]

We do not agree with the position of the opponents of the act that the phrase "just cause" is unconstitutionally vague and unspecific. However, the Commonwealth's protestation, in the *Blickman* brief, that it "cannot conceive that the Legislature, which was enacting a remedial statute to correct an injustice, could have intended and permitted, through legislation, the perpetration of another injustice," is far more pious than persuasive. To our comment that the statute is one-sided, the Secretary of Justice on behalf of the Commonwealth, urged us to read it in the light of various general provisions of Puerto Rico law applicable to the construction of contracts. This we have done. We end up convinced that the only defense open to a manufacturer to an action under Law 75, short of proof of breach by the dealer, would be impossibility of performance. 31 L.P.R.A. § 3193. To add to "just cause," as was suggested, good faith, or the legitimate interests of the manufacturer, would be to fly in the face both of the unambiguous statutory provisions, and the equally unambiguous legislative history. The fact that a dealership has become economically highly disadvantageous is not excusable impossibility, but is, precisely, a contingency that the legislature sought to guard against.

Some of the proponents of the act invite a comparison with the federal Automobile Dealers Day in Court Act, 15 U.

S.C. § 1221–25, hereinafter the Federal Act. The comparison is ill-taken. In fact, it is precisely to the extent that Law 75 departs from the provisions of that statute that it is in difficulties.

The unusual position in which automobile dealers find themselves has long been known to this court.[10] Because they are normally locked in, with no other source of income and no easy opportunity to convert to other lines, an unscrupulous manufacturer is able to take advantage of its dealers by making unjustifiable demands, such as requiring needlessly large showrooms, or the purchase of undesired parts or models, under threat of cancellation of the dealership. It was found that many manufacturers were engaging in such practices. See generally, Kessler, Automobile Dealer Franchises: Vertical Integration by Contract, 66 Yale L.J. 1135 (1957). The Federal Act did not seek to convert terminable automobile dealers contracts into non-terminable ones, but was tailored to prevent contractually unjustified demands by giving a cause of action for damages resulting from unfair "coercion" and "intimidation." 15 U.S.C. § 1221(e). Absent such improper behavior, any action within the terms of the contract remained permissible, including outright termination without proof of grounds therefor. Berry Bros. Buick, Inc. v. General Motors Corp., E.D.Pa., 1966, 257 F.Supp. 542, 546, aff'd mem. 3 Cir., 1967, 377 F.2d 552; *cf.* Southern Rambler Sales Inc. v. American Motors Corp., 5 Cir., 1967, 375 F.2d 932, cert. denied 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92; 15 U.S.C. §§ 1221, 1222.

By contrast, Law 75 applies to every kind of dealer across the board. As pointed out in the memorandum opinion of the district court in Felix A. Rodri-

---

9. If we may be forgiven a rude analogy, the change seems comparable to a legislative retrospective conversion, in the asserted interest of public morals, of all temporary laisons into marriage, with the necessity of divorce and alimony. Indeed, it is worse, for until Law 75 was enacted temporary dealerships were in all respects legal.

10. *See* Volkswagen Interamericana, S.A. v. Rohlsen, 1 Cir., 1966, 360 F.2d 437, cert. denied 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143; Young Motor Co. v. Com'r of Internal Revenue, 1 Cir., 1960, 281 F.2d 488.

guez, Inc. v. Bristol-Myers Co., D.P.R. 2/13/68, many types of dealers carry numerous articles and lines, or can readily convert and absorb the loss of a single manufacturer. Such dealers are not subject to pressure by threats of cancellation. Nor was the Puerto Rico act framed in terms of illegitimate demands—except to say that adherence to the contract terms was itself illegitimate. By labelling the exercise of express contractual rights "unjust" the legislature was not giving a cause of action for contractual abuse; it was rewriting the contract.

Comparing Law 75 with the Federal Act in terms of retrospectivity is, in a sense, merely an intellectual exercise. The parties have cited no case holding even the Federal Act constitutionally retrospective. Non constat, in the light of the differences, that it might properly be so held had the question arisen.[11] Law 75, however, cannot be.

The judgment of the District Court is vacated. Judgment for the defendant.

11. We do not reach the question of non-retrospective application of Law 75, as we may wonder how many such dealerships have been established. Since the provisions of the law are non-waivable, manufacturers who are unwilling to accept them will not enter into dealership contracts at all, and dealers who would prefer to have dealerships omitting such benefits rather than have none, have lost, to that extent, their freedom of contract. It is possible that if the legislature had realized that the law could be applied only prospectively it would not have enacted it. With this matter, however, we are not presently concerned.