Alexander Berman, J.
Plaintiffs bring this action for a declaratory judgment against Kiwanis International and the New York District of Kiwanis International seeking to nullify certain provisions of the Kiwanis constitution and by-laws which restrict membership to men. They move now for a temporary injunction and judgment on the pleadings. Defendants, by cross motion, move for an order dismissing the complaint.
The basic facts are not in dispute. Plaintiff, Kiwanis Club of *1076 Great Neck, Inc., hereinafter referred to as the local club, was duly chartered by Kiwanis International, hereinafter referred to as International. It was formed, organized and operated pursuant to the constitution and by-laws of International. Some time in 1973-1974, several women, including the female plaintiffs, were admitted to membership in the local club despite the provisions of the International constitution and bylaws, which restrict membership to men. The International, upon being advised of such development, informed the local club that this was forbidden. When plaintiff, local club, refused to comply with the charter provision, the board of trustees of International voted to revoke the local club’s charter. The club appealed this decision to the general convention of the International body in June of 1975, but the decision of the International board of trustees was sustained.
Plaintiffs contend that this discrimination by defendants against women is in violation of the Fifth and Fourteenth Amendments of the United States Constitution, the New York State Constitution, the Federal Civil Rights Law, section 340 of the General Business Law of New York, and article 15 of the Executive Law of New York.
Neither in the pleadings, nor the moving papers, do plaintiffs claim any Federal or State Governmental interest or involvement in Kiwanis nor in the operation of International, except that defendants enjoy the benefits of tax exemption. However, plaintiffs claim that Kiwanis is largely a business organization and is made up of business and professional people; that commercial contacts are made by members through the channels of such organization; that the denial of membership to business and professional women is in violation of their rights under the Federal and State Constitutions and statutes, and deprives them of opportunities to compete on an equal footing with men in the business community. Furthermore, and this is the crux of plaintiffs’ case, they argue that Kiwanis is not truly a private club as defined in the 1964 Civil Rights Act. (US Code, tit 42, § 1981 et seq.)
In support of their contention that Kiwanis is not a private club but is in fact a commercial organization and an important factor in the business community, plaintiffs, among other things, point to the fact that at the opening of all meetings of the local clubs, each member is required to state his name, occupation or profession, and firm name; that many business concerns, including banks, pay the dues of their employee *1077 members, and that certain members have developed substantial commercial sales and other business through the contacts made by means of membership.
The constitution of International sets forth its objects as follows:
"To give primacy to the human and spiritual, rather than to the material values of life.
"To encourage the daily living of the Golden Rule in all human relationships.
"To promote the adoption and the application of higher social, business, and professional standards.
"To develop, by precept and example, a more intelligent, aggressive, and servicable citizenship.
"To provide, through Kiwanis clubs, a practical means to form enduring friendships, to render altruistic service, and to build better communities.
"To cooperate in creating and maintaining that sound public opinion and high idealism which make possible the increase of righteousness, justice, patriotism and good will.” Their declared objectives certainly cannot be construed, on their face, as having any commercial implications.
Defendants contend that International and its chartered clubs qualify as "excluded private clubs” from the Civil Rights Act of 1964 (US Code, tit 42, § 2000a, subd [e]), which states: "e. The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public”. Defendants appear to meet the standards and criteria by which an organization must qualify if it is truly a private club as outlined in the case of Wright v Cork Club (315 F Supp 1143). These standards are enumerated as follows:
1. Concern or plan for the selection of members.
2. Standards of plan for the screening of prospective members.
3. Use of facilities primarily by members only.
4. Club members dictate the policies of the club.
5. Nonprofit and/or noncommercial purpose in the forming of the club.
Section 340 of article 22 of the General Business Law of the State of New York, cited by plaintiffs, and which prohibits unlawful interference with the free exercise of any activity in the conduct of any business is not applicable to this situation; *1078 nor is section 290 of the Executive Law of the State of New York (Human Rights Law) in any way pertinent. The latter deals primarily with discrimination in employment, public accommodations, resort and amusements and housing accommodations and to insure that every individual shall have an equal opportunity to participate fully in the economic cultural and intellectual life in the State. This law is not relevant, but in any event was not intended to deal with membership in a private club.
The fact that individual members may use their membership in a club to further their own business interests does not, in any way, change the avowed purposes of the organization, or convert it into a commercial club. There can be no doubt that membership in a golf club, for example, may be used by some members to promote business connections and that certain employers of such members might even pay their dues. It is also conceivable that there are some who join a charitable or religious organization and become active therein, because of possible selfish or commercial benefits. Should the activities or motives of some individual members be sufficient to convert such organization itself into a commercial enterprise?
All of the constitutional and statutory provisions cited and arguments advanced here by plaintiff were similarly urged in an almost identical case involving the Jaycees, a comparable national organization with local chapters, which also had a charter provision denying membership in any of its clubs to women. The Jaycees (Junior Chamber of Commerce) were sustained in their discriminatory charter provision restricting membership to men (New York City Jaycees v United States Jaycees, 512 F2d 856). The Second Circuit Court of Appeals in the latter case, which was decided as recently as March 7, 1975, held (p 859) that the organization was immune from restrictions of the Fifth and Fourteenth Amendments to the Constitution, even though it was a recipient of Federal funds and enjoyed tax exempt status. "The mere receipt of public funds does not convert the activities of a private organization into state activities * * * Similarly, the grant of tax exemptions to the Jaycees does not constitute significant government involvement in the organization’s exclusionary membership policy.” The court therein concludes (p 860): "The Jaycees is a private organization acting in connection with its own enterprise, and the federal courts have no power to grant an *1079 injunction prohibiting its discriminatory membership policíes.
In a similar case, also relating to the issue of sex discrimination in the same organization, the United States Court of Appeals, Tenth Circuit, in upholding the right of the Jaycees to discriminate against women in its Rochester club, in the case of Junior Chamber of Commerce of Rochester, Rochester, N.Y. v United States Jaycees, Tulsa, Okla. (495 F2d 883-885) held: "There is no dispute about the invalidity of discrimination by the state or federal government based on sex and there is no dispute about the fact that the plaintiffs were excluded from membership in the organization purely on the basis of sex. Therefore, the only issue is whether the discrimination can by reason of the circumstances present, be considered official (state or federal) action. It must also be conceded that private discrimination does not give rise to a constitutional violation. See Moose Lodge No. 107 v Irvis, 407 US 163, 92 S Ct 1965, 32 L Ed 2d 627 (1972).” (Emphasis added.)
It should be noted that the Jaycees is actually a Junior Chamber of Commerce whose prime object is to further the business interests of its members (New York City Jaycees v United States Jaycees, 512 F2d 856 supra). Thus, the decisions involving Jaycees are of considerable significance in the light of plaintiffs’ claims of commercialism.
It is abundantly clear from these and other similar decisions that Kiwanis is truly a private club, and as such has the unequivocal right to determine its own membership and to be discriminatory as to such membership, even though it may enjoy tax exemption. This policy of noninterference with private clubs was clearly expressed by Mr. Justice Douglas in his dissenting opinion in the case of Moose Lodge No. 107 v Irvis (407 US 163, 179-180), wherein he said: "My view of the First Amendment and the related guarantees of the Bill of Rights is that they create a zone of privacy which precludes government from interfering with private clubs or groups. The associational rights which our system honors permit all white, all black, all brown, and all yellow clubs to be formed. They also permit all Catholic, all Jewish, or all agnostic clubs to be established. Government may not tell a man or woman who his or her associates must be. The individual can be as selective as he desires. So the fact that the Moose Lodge allows only Caucasians to join or come as guests is constitutionally irrelevant, as is the decision of the Black Muslims to *1080 admit to their services only members of their race.” (Emphasis added.)
In the Moose Lodge case (supra), the majority of the court determined that it had no authority to interfere with the actions of a private club which refused to permit admission to its club restaurant facilities a person not of the Caucasian race. The dissent of Mr. Justice Douglas was based upon his argument, overruled by the majority, that this club had lost the benefits of privacy by reason of its possession of a liquor license from the State of Pennsylvania.
It is the court’s conclusion that there is no valid basis to support plaintiffs’ claims that Kiwanis is not a private club, or that the denial of membership to women is in any way violative of any constitutional or statutory provision, Federal or State. The court further concludes that defendants’ policy of restricting membership to men may not be disturbed by it.
Settle judgment on notice in accordance with this decision. The court notes that a dismissal of plaintiffs’ complaint is not appropriate in an action for declaratory judgment and therefore the judgment to be submitted will provide for a declaration in favor of defendants. (Legislative Conference of City Univ. of N.Y. v Board of Higher Educ. of City of N. Y., 38 AD2d 524.)