In an action inter alia to declare that (1) the revocation order or directive issued by defendant Kiwanis International with respect to the charter of plaintiff Kiwanis Club of Great Neck, Inc., was issued in violation of law and (2) the resolution adopted by the Kiwanis Club of Great Neck, Inc., allowing women to become members is lawful, plaintiffs appeal from a judgment of the Supreme Court, Nassau County, entered November 21, 1975, which, inter alia, (1) denied plaintiffs’ motion for a preliminary injunction and (2) declared that Kiwanis International is a private club and that its policy of restricting membership to men only is a valid restriction. Judgment affirmed, with $50 costs and disbursements. Plaintiffs have failed to raise any substantial question of fact which requires a trial of the action. The record indicates that Kiwanis International is a private organization or club, not subject to the constitutional standards of the Fourteenth and Fifth Amendments to the United States Constitution or to the provisions of the Federal Civil Rights Act of 1964 (US Code, tit 42, § 2000a et seq.) (see Moose Lodge No. 107 v Irvis, 407 US 163; New York City Jaycees v United States Jaycees, 512 F2d 856; Junior Chamber of Commerce of Rochester v United States Jaycees, Tulsa, Okla., 495 F2d 883). We have also considered plaintiffs’ arguments that the discriminatory membership practice in question violates the New York Human Rights Law and the General Business Law of New York, and find them to be without merit. Gulotta, P. J., Martuscello, Latham and Cohalan, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment, grant the plaintiffs’ application for a preliminary injunction, and to remand the action to the Supreme Court for further proceedings in accordance with the following memorandum: The Kiwanis Club of Great Neck, Inc. (Great Neck) and its four female members brought this action for a declaratory judgment against the New York District of Kiwanis International and the board of trustees of Kiwanis International (the International) to nullify the provisions of the constitution and by-laws of the International, which restrict membership to men. They also sought a preliminary injunction (1) restraining the International from effectuating an order issued by it revoking Great Neck’s charter because it had adopted and implemented a resolution allowing women to become members and (2) directing the defendants to reinstate Great Neck as a full member and to restore to it all privileges to which it was entitled by reason of its association with Kiwanis International. Special Term denied plaintiffs’ motion for a preliminary injunction and, upon defendants’ cross motion for dismissal of the complaint, declared that the "men” membership restriction was valid. This court is upholding that determination. I am in complete disagreement with Special Term’s holding and this court’s affirmance thereof, believing, as I do, that there is at least a question of fact as to the validity of the "male” restriction provisions and that, therefore, the preliminary injunction sought *907 by plaintiffs should be granted so that the status quo may be maintained until after a trial of the issues is had.
THE ISSUES
The major issue on this appeal is whether the judgment appealed from, which holds that the revocation order and directive issued by the International with respect to the charter of the plaintiff club was properly issued, involved State action, thus denying the plaintiffs the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. A second issue is whether the Kiwanis International is in fact a private club so that its denial to women of membership in its affiliate local clubs because of their sex, with concomitant effect on the ability of those so excluded to participate profitably in a business or profession, violates State and Federal guarantees against such discrimination by other than private clubs. A third issue is whether, in determining on the basis of the affidavits of the parties that the International is a private club and therefore free to use a discriminatory qualification limiting eligibility for membership to men only, Special Term committed error, since the fact question of whether the International is a private club rather than an organization which acts as a forum in which members seeking business and professional opportunities meet and advance their individual corporate, economic and commercial interests is put into serious factual dispute by those affidavits.
THE PRIOR PROCEEDINGS
Great Neck is a corporation organized under the laws of the State of New York. The four female plaintiffs are members of Great Neck, which was a chartered local club of the Kiwanis International, within its Long Island North Division of its New York District of Kiwanis International. On October 1, 1973 plaintiff Great Neck accepted the four individual plaintiffs as members and, on January 3, 1974, it adopted a resolution which permits women to become members. The defendants thereafter notified Great Neck that it was in violation of the International’s constitution and by-laws and that a hearing would be held before the board of trustees of the International on April 27, 1974. Prior thereto the International returned to Great Neck the magazine subscriptions paid for by the women plaintiffs as well as their membership dues. After the hearing, the International notified Great Neck that its charter was being revoked. On July 16, 1974 Great Neck appealed the revocation to the 1975 convention of the International. That appeal, which exhausted Great Neck’s remedies within the International, was denied. Under the International’s constitution and by-laws, after there is a final determination that a charter should be revoked, the International, if the club is incorporated, has the right to petition the appropriate court for an order of dissolution of the local organization. Great Neck’s complaint charges that the International’s revocation of its charter violated the public policy and laws of the United States and of the State of New York including, but not limited to, titles II and VII of the Federal Civil Rights Act of 1964 (US Code, tit 42, § 2000a et seq.) and section 340 of the General Business Law and article 15 (Human Rights Law) of the Executive Law of the State of New York. In support of the motion for a preliminary injunction, Jack Perlman, the president of Great Neck, by affidavit, contended that the provisions of the International’s constitution and by-laws which barred women from membership in member clubs incorporated or operating in New York State were null and void because they violate the public policy and laws of the State, which bar discrimination against women, by exclud *908 ing them from Kiwanis clubs, which "are an integral part of the commercial community in which such members of the female sex must compete.” The same affidavit notes that section 4 of article IV of the constitution and bylaws of Kiwanis International provides: "Upon final determination of revocation of the charter, and if the club is incorporated, said corporation shall be dissolved in accordance with local statutes; or in the event the corporation is not dissolved within one hundred and twenty (120) days, Kiwanis International has the right to petition and obtain proper orders of dissolution” (emphasis supplied). Florence Bromley, one of the individual plaintiffs, also submitted an affidavit in support of the motion for a preliminary injunction in which she stated that she is a licensed real estate broker in Great Neck, that her reasons for becoming a member of the Kiwanis Club of Great Neck, Inc., were to serve the community in which she conducted her business and to make "commercial and business contacts” within the setting of a service club and that she had thereby "made valuable business contacts and associations, all of which have furthered the development of her business within the community.” Defendants cross-moved to dismiss the complaint for failure to state a cause of action and/or for summary judgment. Their attorney’s supporting affidavit quotes (with certain apparent inaccuracies) from article II of the International’s constitution, which reads: "Section 1. The Objects of Kiwanis International shall be: To give primacy to the human and spiritual, rather than to the material values of life. To encourage the daily living of the Golden Rule in all human relationships. To promote the adoption and the application of higher social, business, and professional standards. To develop, by precept and example, a more intelligent, aggressive, and serviceable citizenship. To provide, through Kiwanis clubs, a practical means to form enduring friendships, to render altruistic service, and to build better communities. To cooperate in creating and maintaining that sound public opinion and high idealism which make possible the increase of righteousness, justice, patriotism and good will.” He then argues that these "idealistic and spiritual” objects have "nothing to do with business or commerce in a direct fashion”, overlooking or disregarding the fact that the International’s constitution, inter alia, declares that one of the purposes of its creation is encouraging "the adoption and application of higher * * * business and professional standards” and "to provide, through Kiwanis clubs, a practical means to form enduring friendships”. The affiant nowhere sets forth whether and how the practice in Kiwanis clubs conforms to the high altruistic goals set forth as objects of the International; nor does he negate what is common knowledge, that the Kiwanis are clubs consisting largely of businessmen and professionals who meet at regular intervals in order to get to know each other and to use the resulting acquaintanceships and friendships to advance their business and commercial interests, as did the female plaintiff who submitted her affidavit in support of the motion for the preliminary injunction. Defendahts’ attorney’s affidavit also notes that articles IV and V of the International’s constitution specifically require local clubs to comply with the constitution and by-laws on pain of expulsion, and that section 4 of article V of the constitution declares: "a. The active membership of this club shall consist of men of good character and community standing residing or having other community interest within the area of this club.” He also notes that article II of the by-laws provides: "a. Any man possessing the qualifications prescribed in Article V, Section 4 of the Constitution of Kiwanis International may be elected to active membership in a chartered club. b. No man shall be eligible to membership in a club who holds membership (other than honorary) in any other Kiwanis club or *909 other service club of like character.” The affiant declares that the "only question before the Court is whether a purely private club or organization with the objectives expressed by Kiwanis may eliminate women as members.” However that begs the question, for it assumes that Kiwanis is "a purely private club”. But his own assertions that the Kiwanis International has "idealistic and spiritual” objects having "nothing to do with business or commerce in a direct fashion” (emphasis supplied) and that the "clubs’ objects are to instill ideas of righteousness, justice, patriotism and good will,” certainly do not indicate that the clubs are "purely private”. Rather, they indicate that the International wishes to benefit the public generally and to eschew any claims of privilege or exclusiveness. Furthermore, I fail to find any credible evidence in the record (as distinguished from conclusory assertions) that the Kiwanis clubs are "purely private”, have "purely private” purposes, or should be left free to use the discriminatory standard of sex to limit admissions even though their claimed right in that regard is based upon an irrational ground and can serve only to enhance the difficulty of achieving the International’s objects as set forth in article II of its constitution. International’s attorney seeks to dispose by fiat of the question whether the case involves issues of fact by asserting: "There are no real issues of fact”. But despite this dismissal of the question, there remains the real fact issue whether Kiwanis clubs, in soliciting membership from professional and business people to achieve the high altruistic goals set forth in its constitution as its objects, might not also bring economic benefits to its individual members. There also remains the question whether those objects could not better be achieved by the maintenance of membership admission standards which relate rationally to those goals by soliciting the assistance, through membership, of all citizens who support such goals rather than by maintaining an irrational policy of exclusion of one half of the world because of sex. A private club is one which is purely social in purpose, or which has some single narrow purpose which benefits the selfish interests of its members, such as golf clubs, social clubs, swimming clubs, recreational clubs, etc., and which establishes prior congeniality with those already members as a test of membership eligibility. Nothing in the stated objects of the International indicates that it meets the standards of a "purely private club”. To define a "private club” as being one "not in fact open to the public” is to allow every club to become "private” merely by barring some small segment of the public. It is a limitation which carries within itself the seed of its own easy evasion. The balance of the affidavit in support of the defendants’ cross motion to dismiss contends that International and its affiliates are "totally outside of 'normal commercial activity’ that it is difficult to understand how the exclusion of the women plaintiffs from membership would in any way deny them opportunities in commerce; and that if they joined the Kiwanis to make commercial and business contacts, they were engaging in "crass commercialism” and not operating within the objects of the Kiwanis. The plaintiffs submitted affidavits by their counsel and three male members of the plaintiff club and some exhibits in opposition to the defendants’ cross motion. Plaintiffs’ attorney’s affidavit contends that the affidavit in support of the cross motion made it clear that there were real issues as to whether the defendants were in fact a purely private club rather than one which has commercial aspects and which mixes business with civic activity. They pointed out that at trial they planned to introduce evidence to show that corporations, utilities and banking institutions paid the Kiwanis dues of their employee members and took such *910 payments as business deductions.[1] They also stress the fact that the plaintiff club had a valid contract and property interest in pursuing its legal existence within the Great Neck community and that the women plaintiffs had a similar economic interest in obtaining membership therein, arguing, and I think with plausibility, that the equal employment opportunity protected by the Executive Law includes the business opportunities implicit in the business contacts made within the confines of a service club. In effect, their contention is that clubs, such as the Kiwanis, which hold themselves out as servicing the general public, thereby become places of public accommodation.
THE DECISION AT SPECIAL TERM
Special Term’s judgment denied the plaintiffs’ motion for a preliminary injunction and, on defendants’ cross motion, adjudged that (1) the Kiwanis International is a private club and that its policy restricting membership to men only is a valid restriction, (2) the denial of membership in the Kiwanis International to women is in no way violative of any constitutional or statutory provision, Federal or State, (3) section 340 of article 22 of the General Business Law "is not applicable to this situation”, (4) section 290 of the Executive Law "is not applicable to this case”, (5) the revocation order and directive issued by the International with respect to the charter of Great Neck was properly issued and (6) the resolution adopted by Great Neck, allowing women to become members, was violative of its charter provisions. In its accompanying decision Special Term found that the defendants "appear to meet the standards and criteria by which an organization must qualify if it is truly a private club as outlined in the case of Wright v. Cork Club, 315 Fed. Sup. 1143, U.S.D.C., S.D. Texas (1970).” It listed those standards as follows: "1. Concern or plan for the selection of members. 2. Standards of plan for the screening of prospective members. 3. Use of facilities primarily by members only. 4. Club members dictate the policies of the club. 5. Non profit and/or non-commercial purpose in the forming of the club.”[2] Rejecting section 340 of article 22 of the General Business Law and section 290 of the Executive Law as inapplicable, the first because there was no unlawful interference in the conduct of anyone’s *911 business in this case, and the second because it was "not intended to deal with membership in a private club”, Special Term declared that the fact that individual members of a private club may use their membership to further their own business interests does not change the avowed purpose of the organization or convert it to a commercial club. Special Term then stated that all of the constitutional and statutory arguments advanced by plaintiffs had been urged "in an almost identical case” involving the Jaycees (Junior Chambers of Commerce), which it described as "a comparable national organization with local chapters, which also had a charter provision denying membership in any of its clubs to women”, in which their "discriminatory charter provision” was sustained (New York City Jaycees v United States Jaycees, 512 F2d 856). It also cited a similar case which reached a similar result, Junior Chamber of Commerce of Rochester v United States Jaycees, Tulsa, Okla. (495 F2d 883), adding, that since "the Jaycees is actually a Junior Chamber of Commerce whose prime object is to further the business interests of its members”, those decisions "are of considerable significance in the light of plaintiffs’ claims of commercialism.” Special Term then concluded "that there is no valid basis to support plaintiffs’ claims that Kiwanis is not a private club, or that the denial of membership to women is in any way violative of any constitutional or statutory provision, Federal or State”, and that "defendants’ policy of restricting membership to men may not be disturbed by it.”
THE CONSTITUTIONAL QUESTION
I disagree with the conclusion of Special Term for two reasons. The first is that in this case, unlike the two Jaycees cases relied on by Special Term, defendants’ by-laws provide, in relevant part (art IV, § 4): "Upon final determination of revocation of the charter, and if the club is incorporated, said corporation shall be dissolved in accordance with local statutes; or in the event the corporation is not dissolved within one hundred and twenty (120) days, Kiwanis International has the right to petition and obtain proper orders of dissolution.” Those provisions necessarily involve State action by utilization of State court judgments or decrees to effectuate an action which has for its goal the discriminatory exclusion of women, because of their sex, from membership in any Kiwanis club. Although Shelley v Kraemer (334 US 1, 13) declares that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful”, it also declares that there is "state action” in violation of that amendment when the private person or group engaging in such discriminatory or wrongful conduct seeks to achieve such discrimination by "judicial enforcement by state courts of the restrictive terms” of its discriminatory provisions. This is precisely what the International did when it included section 4 of article IV in its by-laws. In that provision it established a means for obtaining "judicial enforcement by state courts of the restrictive terms” in its constitution and by-laws which bar women from membership when an offending club which admits women as members refuses to surrender its charter voluntarily. True it is that here, unlike Shelley, the enforcement compulsion of the State authorities would be directed against the club violating the ban on women by revoking its corporate charter, rather than against the women members, but the ultimate effect is the exclusion of women as members by ousting the local clubs which admit them from affiliation with the International. This,under Shelley is "state action” in violation of the Fourteenth *912 Amendment.[3] Here the defendant International, like those seeking to enforce the racial restrictive covenants in Shelley, has sought in its charter to secure for itself the power to invoke the "active intervention of the state courts, supported by the full panoply of state power” (see Shelley v Kraemer, supra, p 19) to oust the plaintiff club because it had chosen, in disregard of the sex membership limitation, to admit the women plaintiffs who had applied for membership to join in furthering the Kiwanis’ human, spiritual, altruistic goals "to encourage the daily living of the Golden Rule in all human relationships”, "to promote the adoption and the application of higher social, business, and professional standards”, "to develop, by precept and example, a more intelligent, agressive, and serviceable citizenship” and to take advantage of the Kiwanis club "to provide * * * a practical means to form enduring friendships”. Here, too, the action of the Special Term has "made available” to defendants "the full coercive power of government to deny” to the plaintiffs, on the ground of sex, "the enjoyment of property rights” in membership in the plaintiff club which the individual plaintiffs "are willing and financially able to acquire” and which the plaintiff club is "willing to sell.” The "difference between judicial enforcement and nonenforcement of the restrictive” membership limitation "is the difference to petitioners between being denied rights of property available to” male members of the community, and local Kiwanis clubs which bar women as members, "and being accorded .full enjoyment of those rights on an equal footing” (Shelley v Kraemer, supra, at p 19). Shelley v Kraemer, a landmark decision when it was handed down in 1948, is still the law of the land (see Sullivan v Little Hunting Park, 396 US 229; Lynch v Household Finance Corp., 405 US 538, 544). Under it, when Kiwanis International, by section 4 of article IV, of its by-laws, provided that it could enforce revocation of the charter of an affiliated club which is incorporated in this State by petitioning the court for proper orders of dissolution, it established a machinery which necessarily required the invocation of State action to enforce its discriminatory ban on admission to membership of women to any of its affiliated clubs which incorporated[4] State action which was in violation of the Fourteenth Amendment’s ban on denial of equal protection of the laws. Thus, the plaintiffs here may properly invoke the aid of the courts to prevent such unconstitutional "state” action by the defendants.
THE JAYCEES CASES
The cases relied upon by Special Term involving the Jaycees are Junior *913 Chamber of Commerce of Rochester v United States Jaycees, Tulsa, Okla. (495 F2d 883, cert den 419 US 1026) and New York City Jaycees v United States Jaycees (512 F2d 856). In both, the plaintiffs were local affiliates of the defendant national organization. In the first case the local affiliate brought an action against the national organization after the latter had expelled it for admitting women to membership in violation of the United States Jaycees’ by-laws limiting membership to males. In the second case the plaintiff local chamber sought to enjoin the national organization from revoking its charter for adopting a by-law admitting women as members. In both cases the plaintiff local chapters relied on the Fifth and Fourteenth Amendments. In the Rochester Jaycees action plaintiffs also relied on the Civil Rights Act (US Code, tit 42, § 1983) and the Civil Rights Act of 1964, as well as the fact that the Jaycees and various State chapters thereof enjoyed tax exempt status under section 501 (subd [c], pars [3], [4]) of the Internal Revenue Code (US Code, tit 26) and received Federal grants and contracts from the Office of Economic Opportunity and other departments of the Federal Government. There is no indication that the revocation of the Rochester affiliate’s charter in any way involved or required judicial or other State action or that the United States Jaycees, Inc., provided in its constitution or by-laws for resort to the courts or to a State’s administrative agencies to implement any charter revocation. Neither is there any such indication or claim to that effect made in the New York City Jaycees case. Rather, in both cases, the plaintiff local chambers sought to establish Federal constitutional claims by relying on the fact that the Jaycees had a partial exemption from Federal taxes. In the Rochester case, the plaintiffs, in an effort to establish a Federal question with its concomitant of Federal jurisdiction, also cited the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972. But the Federal appeals court failed to see that there was present the essential State action (Junior Chamber of Commerce of Rochester v United States Jaycees, Tulsa, Okla., supra, p 887). In the New York City Jaycees case, the plaintiffs also relied upon the "public function” doctrine, whereby private persons performing certain functions traditionally reserved to the State may become subject to constitutional restrictions. But the United States Court of Appeals, Second Circuit, rejected this contention on the ground that the doctrine applied only to those services which are so clearly governmental in nature that the State cannot be permitted to escape responsibility by allowing them to be managed by a supposedly private agency. There is a third case, not cited by Special Term, involving a local Jaycees unit which amended its by-laws to admit women to membership and was therefore the subject of punitive action by the United States Jaycees (Junior Chamber of Commerce of Kansas City v Missouri State Junior Chamber of Commerce, 508 F2d 1031). There the Kansas City Jaycees adopted its new nondiscriminatory by-law in February, 1974. It had a contract with the United States Jaycees under which the convention honoring the Jaycees’ ten outstanding young men was to be held in Kansas City. In August, 1974 the United States Jaycees, by resolution of its National Executive Committee, canceled its contract with the Kansas City Jaycees for the convention, one of the reasons for this being the change in the Kansas City Jaycees’ by-laws to open membership to women. In response, the Kansas City Jaycees brought an action for preliminary and injunctive relief under title 42 of the United States Code (§ 1983; § 1985, subd [3]; § 2971c, subd [b]) and the First, Fifth and Fourteenth Amendments. The District Court granted a preliminary injunction against *914 the United States Jaycees’ moving the convention to another city. The United States Court of Appeals reversed and remanded, with a direction to cancel the injunction. It said (p 1033): "The Supreme Court has often stated that private action, as distinguished from state action, is immune from the equal protection restrictions of the fourteenth amendment. Jackson v. Metropolitan Edison Co., 419 U.S. 345 * * *; Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173 * * *; Shelley v. Kraemer, 334 U.S. 1, 13 * * *. The parties concede that this same reasoning requires a finding of 'federal action’ before there is any deprivation of due process in violation of the fifth amendment. See Junior Chamber of Commerce v. United States Jaycees, 495 F.2d 883, 887 (10th Cir., 1974), cert. denied, 419 U.S. 1026 * * *; Jackson v. Statler Foundation, 496 F.2d 623, 627 n. 5 (2d Cir. 1974); New York City Jaycees, Inc. v. United States Jaycees, Inc. 377 F.Supp. 481, 487 (S.D.N.Y. 1974); McGlotten v. Connally, 338 F.Supp.448, 455 n.31 (D.D.C.1972). In either case, it is essential to show that there is 'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.’ Jackson v. Metropolitan Edison Co., supra, 419 U.S. 351”. The court concluded that the plaintiff, which based its claims of Federal jurisdiction and violations of Federal statutory and constitutional provisions on the fact that the United States Jaycees and some of its affiliates had Federal tax exemption and received Federal funds for use in connection with charitable projects it was sponsoring, had failed to show the "close nexus” essential to sustain a finding that the United States Jaycees were engaged in State action or Federal action sufficient to bring into operation the provisions of the Fifth or Fourteenth Amendment, and thus to present a Federal question. In that case, too, no claim was made that the by-laws invoked to sustain the punitive action sought to be taken by the defendant United States Jaycees against the plaintiff Kansas City chapter required any resort to the courts for implementation. Hence, that decision, like the other two Jaycees cases, is distinguishable from the present litigation because neither the constitution nor by-laws involved contained a provision authorizing the defendant national organization to resort to the courts to enforce its punitive action for violation of its constitution or by-laws by local chapters.
THE IMPACT OF STATE LAW
But even if there were no Kiwanis by-law provision authorizing the International to take legal action to cancel the corporate charter of the plaintiff club by resort to State authority, thus rendering the Shelley case inapplicable, I would nevertheless reverse the judgment appealed from because the issue here is not a matter of either establishing State action or losing jurisdiction of the matter, but rather whether the International’s effort to enforce on its local affiliated clubs in New York State its pattern of discriminatory exclusion of women from membership violates the laws of New York State.[5] Subdivision 9 of section 292 of the Executive Law (Human *915 Rights Law) provides, in part, that the term "place of public accommodation, resort or amusement” shall not include "any institution, club or place of accommodation which is in its nature distinctly private.” While the statute does not define the phrase "distinctly private”, or the word "private”, it is noteworthy that, unlike subdivision (e) of section 2000a of title 42 of the United States Code (Civil Rights Act of 1964), the statute does not simply exclude from its coverage "a private club or other establishment not in fact open to the public”, but uses the much more stringent language "any * * * club * * * which is in its nature distinctly private” (emphasis supplied). Hence, under the Human Rights Law, the word "private” does not, as under the Federal Civil Rights Act of 1964, encompass all places or establishments which are not in fact open to the public or, as under the Fifth and Fourteenth Amendments, which are not engaged in Federal action or State action, but rather includes only a club or organization "which is in its nature distinctly private.” Under the law of New York a club may in fact not be open to the public because it limits use of its facilities or access to its meetings to members, but it may nevertheless not be a private club free from the strictures of the Human Rights Law because it is not a club which is in its nature distinctly private. In so framing the exemption for private clubs, the Legislature was no doubt seeking to draw a line of demarcation between the public and private sectors of our community life. It was trying to insure the carrying out of the State’s responsibility, set forth in subdivision 3 of section 290 of the Human Rights Law, "to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life” and "to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state” and "to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions”, etc. It also declared that (§ 291, subd 1): "The opportunity to obtain employment without discrimination because of age, race, creed, color, national origin, sex or marital status is hereby recognized as and declared to be a civil right.” In defining places of public accommodation, the Legislature recognized that when it barred operators of such places from engaging in discrimination based on race, creed, color, national origin, sex, or marital status, it was exercising the State’s police power to compel personal associations in such places and was therefore raising questions of possible interference with the right of privacy. *916 By including in its definition of a place of public accommodation a specific exception for clubs which were in their nature distinctly private, it conceded that members of genuinely private clubs have a substantial privacy interest with respect to membership practices, and that since their "members having genuinely chosen each other as social intimates, the club functions as an extension of their homes” (see Cornelius v Benevolent Protective Order of Elks, 382 F Supp 1182, 1202; see, also, Wright v Cork Club, 315 F Supp 1143, 1156-1157). As Judge Blumenfeld pointed out in the Cornelius case (supra, p 1202): "In delimiting the right to privacy, two inquiries are essential. First, the strength of the particular claim to privacy asserted must in some manner be measured. Second, the state must demonstrate that it has a legitimate interest in proscribing the questioned conduct of sufficient strength to override the claim to privacy.” The appellants here make no contention that the defendant International is a place of public accommodation; nor, for that matter, is it, for it does not offer any services to the general public. Rather, Great Neck and the individual plaintiffs base their claim for relief on the fact that, in the cases of the individual plaintiffs, they are being deprived of possible access to additional sources of income, and, in the case of Great Neck, it is being deprived of expanded influence and effectiveness in achieving its goals locally. The International, as part of its defense, attacks this contention and argues that the stated "idealistic and spiritual” objects of the Kiwanis have "nothing to do with business or commerce”. But the latter claim is qualified by the phrase, "in a direct fashion”, which, as I have noted, may well flow not only from the fact that the stated objects of the Kiwanis include both a reference to encouraging the adoption "of higher * * * business and professional standards” and to the provision, through Kiwanis clubs, of "a practical means to form enduring friendships”, but also from the fact that the membership of Kiwanis clubs does, in fact, consist of businessmen and professionals, and the practice of the clubs is to have each of the members, at a meeting, announce his name and business or profession to the others present. Further, there is no denial of the statements of one of the individual plaintiffs, and of other individual members who submitted affidavits, that they did benefit economically from their membership in the Kiwanis by obtaining business from other Kiwanis members. Taking those self-betterment-in-business allegations in the affidavits as true (though possibly "crass”), the question is whether the Human Rights Law created rights for the plaintiffs which must be enforced by this court. Subdivision 3 of section 290 of that Law, heretofore referred to, declares that "the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life”, and creates a division "to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic * * * life of the state”. Subdivision 1 of section 291 declares the "opportunity to obtain employment without discrimination because of age, race, creed, color, national origin, sex or marital status” to be a "civil right”. Although section 292 contains definitions of "employment agency”, "employer” and "employee”, it contains no definition of "employment”. Section 300 declares that the "provisions of this article shall be construed liberally for the accomplishment of the purposes thereof.” When it is recalled that the Legislature, when it enacted the Human Rights Law, did not see fit to embody in it a provision which limited the term employment to matters involving an employee-employer relationship, the only conclusion that can follow from the foregoing provisions of the statute is that the *917 Legislature intended them to encompass the right of self-employed professionals and persons engaged in business to have access, without discrimination based on sex, to groups or clubs other than those distinctly private in their nature and which give to the members additional potential sources of patronage or business. Since the individual plaintiffs may invoke the aid of the statute, and the courts, to protect that "civil right” established by sections 290 and 292, and as Great Neck may also do the same to prevent the International from compelling it, at the risk of losing its charter as a Kiwanis club, to engage in actions which violate that civil right of the individual plaintiffs, I would reverse the judgment appealed from, grant the preliminary injunction sought by plaintiffs, and sustain the complaint as setting forth a valid cause of action on which there should be a plenary trial. [83 Misc 2d 1075.]

. An exhibit attached to one of the affidavits is a letter from a bank, which states that the bank pays expenses and dues for its employees to be members of service clubs and that: "It is important to the bank’s business for its bank managers to participate in community affairs, and these activities provide significant opportunities for the cultivation of new business.”

. Special Term’s summary setting forth of the above list of standards contained in Wright v Cork Club (315 F Supp 1143, 1153) differed from those which that court enumerated as the "minimum standards that should be met by any organization to come within private club exemption provided for in 42 U.S.C. § 2000a(e).” The actual listing is as follows: "(1) An organization which has permanent machinery established to carefully screen applicants for membership and who selects or rejects such applicants on any basis or no basis at all; (2) which limits the use of the facilities and the services of the organization strictly to members and bona fide guests of members in good standing; (3) which organization is controlled by the membership either in the form of general meetings or in some organizational form that would and does permit the members to select and elect those member officers who control and direct the organization; (4) which organization is non-profit and operated solely for the benefit and pleasure of the members; and (5) whose publicity, if any, is directed solely and only to members for their information and guidance.”

. Upon the argument of this appeal, when I inquired of appellants’ counsel why their brief made no reference to the constitutional rule laid down in Shelley, she said that in her opinion that case had no application here. Since a constitutional issue is here involved, and despite that disclaimer, I note my opinion as to its relevance because here, as in Shelley (supra, p 19): "These are not cases, as has been suggested, in which the States have merely abstained from action, leaving private individuals free to impose such discriminations as they see fit. Rather, these are cases in which the States have made available to such individuals the full coercive power of government”. In relying, as I do, upon Shelley, I realize that that case dealt with discrimination based on race, a form of discrimination clearly within the original language and intendment of the Fourteenth Amendment, but it is also true that the equal protection clause of that amendment prevents the States from giving a mandatory preference to members of either sex over members of the other (see Reed v Reed, 404 US 71, 76-77).

. See sections 71, 72, 100 and 101 of the former General Corporation Law and section 1102 of the Not-For-Profit Corporation Law.

. See Union School Dist. No. 6 of Towns of Islip & Smithtown, v New York State Human Rights Appeal Bd. (35 NY2d 371), where the Court of Appeals distinguished its decisions in Board of Educ. of Union Free School Dist. No. 2, East Williston, Town of North Hempstead, v New York State Div. of Human Rights (35 NY2d 673, affg 42 AD2d 49) and Matter of Board of Educ. of City of N. Y. v State Div. of Human Rights (35 NY2d 675, affg 42 AD2d 854), both of which involved consideration of Geduldig v Aiello (417 US 484), in which the Supreme Court of the United States concluded that *915 the equal protection clause of the Federal Constitution did not preclude a State Legislature from adopting a sex-based classification in the context of a California employee disability insurance program. The Court of Appeals there said (p 376): "A quite different question was put to us. New York had adopted a statute expressly forbidding discrimination based on sex, a classification which while not foreclosed by constitutional prohibition could be proscribed by legislative enactment. The question we faced then was whether the personnel policies and practices in the cases before us transgressed our statutory proscription. That they might be constitutionally forbidden was irrelevant.” The Court of Appeals also said (pp 377-378): "As Mr. Justice James D. Hopkins wrote in Board of Educ. of Union Free School Dist. No. 2, East Williston v. New York State Div. of Human Rights (42 A.D.2d 49, 52, supra): 'the test to be applied here is not the constitutional standard under the equal protection clause, but the statutory standard of the Human Rights Law. The Human Rights Law is undoubtedly a function of the equal protection guarantee, but it reflects a more direct and positive focus.’ In sum, what the Constitution does not forbid may nonetheless be proscribed by statute.”