511 F.2d 853
 185 U.S.P.Q. 71
 William MARINIELLO t/a J & B Shell Station, Inc., Appellant,
v.
SHELL OIL COMPANY, a corporation of the State of Delaware,
authorized to transact business in the State of New Jersey,
Frank Marinello and Jerry Ferrara, Defendants on Counterclaim,
James E. Gerlock et al., Defendants on Counterclaim of Frank
Marinello.
 No. 74--1385.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1974.
Decided Feb. 14, 1975.
 
 Joseph R. Mariniello, Fort Lee, N.J., on the brief, Fierro, Fierro & Mariniello, Fort Lee, N.J., for appellant.
 William Simon, Michael W. Graney, Michael M. Levy, Richard G. White, Howrey, Simon, Baker & Murchison, Washington, D.C., Andrew S. Polito, Michael D. Loprete, Mattson, Madden, Polito & Loprete, Newark, N.J., for appellee.
 Lewis G. Rudnick, Jerome L. Fels, Allen J. Ginsburg, Rudnick, Wolfe, Snyderman & Foreman, Chicago, Ill., Philip F. Zeidman, Arthur I. Cantor, Robert G. Heiss, Brownstein, Zeidman, Schomer & Chase, Washington, D.C., Jerome Gilson, Hume, Clement, Brinks, Willian, Olds & Cook Ltd., Chicago, Ill., for International Franchise Association, amicus curiae.
 Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Washington, D.C., for National Congress of Petroleum Retailers, amicus curiae.
 Before KALODNER, ALDISERT and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The issue for resolution in this case is whether the decision of the New Jersey Supreme Court in Shell Oil Co. v. Marinello,[1] which the plaintiff seeks to apply here, is violative of the United States Constitution. The district court determined that the New Jersey decision, which protected franchisees from termination without cause, subverted the purposes of the federal Lanham Act, and held that under the Supremacy Clause the state decision could not survive.[2] We conclude that the Supremacy Clause was not violated, and remand.
 
 A.
 
 2
 Mariniello began to operate a gas station as a franchisee of Shell in 1960. The franchise relationship was established by two documents: a real estate lease for gas station premises controlled by Shell, and an agreement granting the dealer, inter alia, the right to purchase Shell products and to use the Shell trademark.[3]
 
 
 3
 Until 1969, the lease and dealer contracts were renewed annually. In 1969, a three-year lease and a three-year dealership agreement were executed. The two contracts were signed the same day and ran for identical periods. The new lease provided that Shell could terminate at will upon its expiration,[4] and the dealer agreement permitted termination at any time with ten days notice. In conformity with their provisions, Shell notified Mariniello in 1972 that neither the lease nor dealer agreement would be renewed. Mariniello protested and refused to relinquish the premises.
 
 
 4
 Mariniello brought suit in the New Jersey state court. He requested continuance of his dealership and lease, and sought damages and an injunction against Shell for discriminatory practices. On Shell's motion, based on diversity jurisdiction, the case was removed to the federal court for the District of New Jersey. 28 U.S.C. §§ 1332, 1441(a).
 
 
 5
 After the removal, Shell, in a counterclaim, prayed for possession of the premises, for damages, and for an injunction predicated on Sherman Act violations by gas station operators, including plaintiff and plaintiff's brother, Frank Marinello. Shell's motion for partial summary judgment on its claim for possession of the station was granted by the district court, premised on its interpretation of relevant New Jersey law.[5]
 
 
 6
 In 1973 the Supreme Court of New Jersey, in Shell Oil Co. v. Marinello, a case involving plaintiff's brother, determined that clauses in franchise agreements permitting termination at will were unenforceable as a matter of state public policy. Moreover, the New Jersey Supreme Court held, where a lease and dealership agreement constitute integral parts of a franchise:
 
 
 7
 . . . public policy requires that there be read into the existing lease and dealer agreement, and all future lease and dealer agreements which may be negotiated in good faith between the parties, the restriction that (a franchisor) not have the unilateral right to terminate, cancel or fail to renew the franchise, including the lease, in absence of a showing that (the franchisee) has failed to substantially perform his obligations under the lease and dealer agreement, i.e., for good cause . . ..[6]
 
 
 8
 Although the recently enacted New Jersey Franchise Practices Act[7] had established a good cause standard for termination of franchise agreements entered into, renewed or amended after its effective date, the Act did not apply to dealership contracts in force before that date, including the contracts in question here. The requirement of good cause in Shell was based on New Jersey common law. While the New Jersey Supreme Court took cognizance of the Act, it held that the Act was 'not directly control(ing).'[8] However, the New Jersey Supreme Court observed that the statute codified the extant public policy of the state.
 
 
 9
 Shortly after the decision by the New Jersey Supreme Court, Mariniello returned to the district court and moved to vacate the earlier partial summary judgment that had been entered against him, claiming that that judgment was based on an unwarranted interpretation of New Jersey law. The district court entertained Mariniello's motion but, by opinion filed January 11, 1974, declined to disturb the summary judgment.
 
 
 10
 Conceding that the decision of the New Jersey Supreme Court would be applicable to the case before it, the district court concluded that the state court holding violated the Supremacy Clause[9] of the Constitution because it conflicted with the Lanham Act,[10] and was therefore of no effect. The Lanham Act provides a national system for registration of trademarks used in interstate commerce, and grants a registered trademark holder the exclusive right to determine the use of its mark by others. The district court reasoned that the Shell case, by curtailing the power of the franchisor to reserve a contractual right to terminate a dealership and lease, 'destroy(ed) the right of an owner of a federally registered trademark to grant a license of that mark for a specific, definite term.'[11] The district court declared that both the Lanham Act and state law, as set forth in Shell, 'deal with the same subject matter and occupy the same field, i.e., federally registered trademarks. . . . The Supremacy Clause prohibits the State of New Jersey from legislating in the field of federally registered trademarks.'[12]
 
 
 11
 In light of its determination that the New Jersey Shell case did not control because of the Supremacy Clause, the district court found it unnecessary to reach a number of constitutional objections pressed by defendant Shell.[13]
 
 
 12
 Mariniello here appeals the judgment of the district court that granted Shell possession of the station premises.[14]
 
 B.
 
 13
 When a state law[15] is attacked as violative of the Supremacy Clause, a federal court must determine whether the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'[16] Justice Brennan stated for the Court in Florida Lime and Avocado Growers, Inc. v. Paul:
 
 
 14
 (F)ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons--either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.[17]
 
 
 15
 We have concluded that under the cases the New Jersey common law, announced in Shell, is not invalid under the Supremacy Clause by reason of the federal Lanham Act.
 
 
 16
 In recent times, the Supreme Court has employed the Supremacy Clause sparingly to strike down state law. Even where extensive federal regulatory schemes have been enacted, if there is no express Congressional language of preemption, states have been allowed to act in the interstices of the federal regulatory matrix.[18] Also, states may require more stringent standards than those designed by Congress,[19] and may otherwise adopt law affecting the subject of a federal statute,[20] so long as the federal purpose is not undermined. The contention by Shell that New Jersey is prohibited by the mere existence of the Lanham Act from all lawmaking relating to trademarks is consequently unpersuasive.
 
 
 17
 Accordingly, Shell can succeed in its Supremacy Clause claim only if it can demonstrate either express preemption by Congress or an incongruity between the state law and the purposes of the federal law. We have been directed to no Congressional manifestation of intent comprehensively to control all aspects of the trademark field, so as to preclude a state from legislating or adjudicating in this area. In an attempt to establish its contention of explicit preemption, Shell refers the court to the section of the Lanham Act dealing with definitions and intent,[21] and Shell maintains that this section evidences an unambiguous Congressional plan to occupy the field to the exclusion of local law. We cannot agree. Despite the adoption of a uniform federal registration scheme, local trademarks may be enforced by statute or common law unless conflict develops with a national trademark.[22]
 
 
 18
 The question thus becomes whether, as contended by Shell and decided below, the federal system of trademark registration is compromised by the New Jersey rule.
 
 
 19
 The Senate report accompanying the Lanham Act stated:
 
 
 20
 The purpose underlying any trademark statute is twofold. One is to protect the public so it may be confident that . . . it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats.[23]
 
 
 21
 Where conflict is alleged between federal and state law, the specific purpose of the federal act must be ascertained in order to assess any potential erosion of the federal plan by operation of the state law. The limited intent of Congress in enacting the Lanham Act is thus crucial to the discussion in the present case.[24] Within the ambit of its intended operation, the Lanham Act expresses a Congressional design to legislate so that the public can buy with confidence, and the trademark holder will not be pirated.[25] If state law would permit confusing or deceptive trademarks to operate, infringing on the guarantee of exclusive use to federal trademark holders,[26] then the state law would, under the Supremacy Clause, be invalid.[27] But such is not the case here. No deception of the public is suggested and no dilution of Shell's investment in its trademark is alleged to have occurred through the New Jersey common law rule that permits franchisors to terminate a franchise only where good cause exists for such termination.
 
 
 22
 The interpretation and enforcement of contracts is traditionally within the province of state courts. Invalidation of contract clauses held repugnant to state public policy is a proper exercise of the state judicial function. Under the facts of this case, once the state court has declared a clause invalid as violating the public policy of the state, a federal court may not enforce such a term solely because a contract entails the licensing of a federally protected trademark. Thus, Shell could not insert in its dealer agreement or lease a clause otherwise unenforceable under state law--such as a disclaimer of warranty, a forfeiture, or a usurious interest rate--and then assert a right to enforce such provision based on its status as a registered trademark owner. And this is so even though the freedom of a trademark holder to dictate the terms of its licensing arrangement would thereby be curtailed to some degree.
 
 
 23
 For the above reasons, we conclude that the decision of the New Jersey Supreme Court in Shell did not offend the Supremacy Clause, since the rule in that case 'do(es) not conflict with the operation of the laws in this area passed by Congress.'[28]
 
 C.
 
 24
 Shell asserts strenuously before this Court, as it did below, that although the New Jersey Supreme Court decision did not expressly depend on the New Jersey Franchise Practices Act, it is in fact a veiled retroactive implementation of that Act. As such, Shell claims that the decision is vulnerable to attack under the Impairment of Contracts Clause of the Constitution: 'No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ..' Art. I § 10.
 
 
 25
 The general rule is clear, that to contravene the strictures of the Constitution requires a legislative enactment. Put another way, the impairment of contracts clause is not violated by a judicial determination. As stated in Cross Lake Shooting & Fishing Coub v. Louisiana:
 
 
 26
 This clause, as its terms disclose, is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the state. It does not reach mere errors committed by a state court when passing upon the validity or effect of a contract under the laws in existence when it was made. And so, while such errors may operate to impair the obligation of the contract, they do not give rise to a Ffederal Question.[29]
 
 
 27
 There has developed a tightly circumscribed exception to the general rule that is described in Cross Lake. Columbia Railway Gas & Electric Co. v. South Carolina[30] and Terre Haute & Indianapolis Railroad v. Indiana[31] are cited for the proposition that a state decision may, without express reliance on a statute, 'by necessary implication (give) effect to a subsequent law of the state . . ..'[32] However, the two cases, embodying the deviation from the elemental rule that legislation is required to provoke a claim of unconstitutional impairment of contract, present critically different factual contexts from the case here. In each of the cited cases the state decision worked a substantial forfeiture of land or money in favor of the state government. Here the state is not a party in interest in the litigation, and obtains no material benefits from the state decision.
 
 
 28
 Moreover, in Columbia Railway and Terre Haute the Supreme Court asserted that the state decision in each case could not withstand judicial analysis independent of the legislation allegedly implemented. By contrast, where the state decision is based on supportable grounds independent of a later statute, the federal courts must accept the state court ruling on state law.[33]
 
 
 29
 Here the district court determined that the Franchise Practices Act was not 'directly and unequivocally implicated' in the state court decision. 368 F.Supp. at 1404. The New Jersey Supreme Court interpreted common law, the district court stated, despite an implicit reliance on the Act 'to some extent.'[34] The district court decided that, since the state decision rested on common law grounds independent of the statute, it would 'refrain from ruling on'[35] the impairment of contract claims.
 
 
 30
 The deference due a state's highest court compels us to respect its holdings. There is no basis for concluding that the New Jersey Supreme Court, contrary to its own assertion that it announced state public policy, in fact retroactively applied the Franchise Practices Act.[36] Accordingly, the claim of Shell under the impairment of contract clause is unpersuasive.[37]
 
 D.
 
 31
 Two additional matters merit attention. First, Shell claims that the application of the New Jersey common law rule to dealer agreements entered into prior to the announcement of the rule deprives it of property without due process of law.[38] It would be improper for the Court to pass on that contention at this time. The disposition of the district court on remand might well render unnecessary a determination of the due process issue. This is so since cause to terminate might be established; and thus the constitutional question would be obviated.
 
 
 32
 In any case, whether or not the New Jersey rule might in some situations operate so as to achieve an impermissible result under the due process clause may not be decided in the abstract. Inadequate facts are developed in the slim record before the Court on this review of summary judgment. Until we are presented with an application of the New Jersey Shell holding to an established set of facts, an adjudication regarding deprivation of property without due process would be premature and speculative.[39]
 
 
 33
 The second matter to be noted is whether abstention is appropriate.[40] Abstention by a federal court is applicable only under narrowly limited and special circumstances, generally where a difficult constitutional question might be avoided by a definitive interpretation of an uncertain state law question by a state court.[41] Federal courts have on occasion abstained from deciding the constitutionality of statutes regulating franchise termination, where the state construction was very uncertain.[42] In contrast to those cases, however, here no state statute of uncertain meaning is before the Court. New Jersey common law, including the Shell decision, provides sufficient background for the district court to determine whether, under such common law, cause for termination exists within the framework of the franchise agreement in this case. Abstention would therefore be inappropriate.
 
 E.
 
 34
 The summary judgment entered against plaintiff Mariniello will be vacated. On remand, the district court should proceed to consider the other issues raised in the case consistent with this opinion, in light of applicable state law and sound constitutional principles.
 
 
 
 [1]
 63 N.J. 402, 307 A.2d 598 (1973), cert. denied 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974) (hereinafter Shell). Frank Marinello, plaintiff in the New Jersey case, is a brother of William Mariniello, plaintiff here. Each was independently franchised by Shell
 
 
 [2]
 368 F.Supp. 1401 (D.N.J.1974)
 
 
 [3]
 Plaintiff suggests that no proof of Shell's federally registered trademark is in the record; however he does not deny that Shell holds the trademark. Since the dealer agreement presumes the existence of the trademark and since the registration is a matter of public record, we accept for purposes of discussion here that Shell holds a federal trademark
 
 
 [4]
 The pertinent lease provision reads:
 TERM. The term of this Lease shall be a primary period beginning on July 1, 1969, and ending on June 30, 1972, and from year to year thereafter, but may be terminated by Lessee at any time by giving Shell at least 90 days' notice, and by Shell at the end of the primary period or of any such subsequent year by giving Lessee at least 30 days' notice.
 
 
 [5]
 The opinion is dated Sept. 7, 1972; the order is dated Dec. 27, 1972. An appeal to this Court was dismissed for want of an appealable final order (No. 73--1191, April 4, 1973)
 
 
 [6]
 307 A.2d at 603
 
 
 [7]
 N.J.S.A. 56:10--1 et seq.,, effective Dec. 21, 1971 (Supp.1974)
 
 
 [8]
 307 A.2d at 602
 
 
 [9]
 Article VI, Clause 2 reads in relevant portion:
 (T)he Laws of the United States . . . shall be the supreme Law of the land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
 
 
 [10]
 15 U.S.C. § 1051 et seq. (1963)
 
 
 [11]
 368 F.Supp. at 1406
 
 
 [12]
 Id
 
 
 [13]
 Although not crucial to its holding, the district court did determine that since no legislation was formally interpreted by the state court, Shell's claim of violation of the impairment of contract clause (Article I, Section 10) was inapposite. See part C, infra
 
 
 [14]
 Mariniello obtained entry of final judgment under F.R.Civ.P. 54(b)
 
 
 [15]
 It is not contested that the governing state law is that of New Jersey
 
 
 [16]
 Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), quoted in Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)
 
 
 [17]
 Florida Lime & Avocado Growers, 373 U.S. at 142, 83 S.Ct. at 1217. Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); Hines, supra note 16; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 119, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973)
 
 
 [18]
 Goldstein v. California, supra note 17 (despite federal copyright law, states can legislate regarding tape recordings); Rice v. Santa Fe Elevator Corp., supra note 17 (notwithstanding pervasive federal scheme, states free to regulate regarding warehouses where Congress has not acted). Kewanee Oil Co. v. Bicron Corp., supra note 17 (trade secrets may be protected by states so long as no conflict created with federal patent law)
 
 
 [19]
 Florida Lime & Avocado Growers, Inc., supra note 16 (state required higher oil content than Department of Agriculture for marketability of fruit in state); Colorado Anti-Discrim'n Comm'n v. Continental Air Line, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (state anti-discrimination laws more comprehensive than federal)
 
 
 [20]
 Kewanee, supra note 17; Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). See Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), striking down a state statute under the Supremacy Clause for incompatibility with federal bankruptcy law
 
 
 [21]
 15 U.S.C. § 1127:
 The word 'commerce' means all commerce which may lawfully be regulated by Congress. . . .
 The intent of this chapter is to regulate commerce within the control of Congress by making actionable in deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.
 
 
 [22]
 See S.Rep.No.1333, 79th Cong., 2d Sess. (1946), 1946 U.S.Code Cong.Serv. 1274, 1275--1276. Burger Kinf of Florida, Inc. v. Hoots, 403 F.2d 904 (7th Cir. 1968)
 Even where collisions occur with federal trademark holders, the Act provides that earlier local use of identifying names may prevail over national trademarks within a circumscribed zone. 15 U.S.C. § 1115(b)(5). See Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969); John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966).
 
 
 [23]
 S.Rep.No.1333, 79th Cong., 2d Sess. in 1946 U.S.Code Cong.Serv. 1274
 
 
 [24]
 Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974)
 
 
 [25]
 Bulova Watch Co. v. Steele, 194 F.2d 567 (5th Cir.) aff'd 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952)
 
 
 [26]
 15 U.S.C. §§ 1114(1), 1115(a)
 
 
 [27]
 See, e.g., Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969); Burger King of Florida, Inc. v. Hoots, 403 F.2d 904 (7th Cir. 1968); John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966)
 
 
 [28]
 Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 479, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974). See Comment, Constitutional Obstacles to State 'Good Cause' Restrictions on Franchise Terminations, 75 Col.L.Rev. 1487 (Dec. 1974); Comment, Federal District Court Declares New Jersey Franchise Act to be an Unconstitutional Regulation of Trademark in Conflict with the Lanham Act, 6 Rutgers-Camden L.J. 155 (1974)
 
 
 [29]
 224 U.S. 632, 638, 32 S.Ct. 577, 579, 56 L.Ed. 924 (1912). Tidal Oil Co. v. Flanagan, 263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 830 (1924). Columbia Ry. Gas & Elec. Co. v. South Carolina, 261 U.S. 236, 43 S.Ct. 306, 67 L.Ed. 629 (1923); Detroit United Ry. v. Michigan, 242 U.S. 238, 37 S.Ct. 87, 61 L.Ed. 268 (1916). See Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692 (1960); Hale, The Supreme Court and the Contract Clause, 57 Harv.L.Rev. 512, 621, 852, 866--68 (1944)
 
 
 [30]
 261 U.S. 236, 43 S.Ct. 306, 67 L.Ed. 629 (1923)
 
 
 [31]
 194 U.S. 579, 24 S.Ct. 767, 48 L.Ed. 1124 (1904)
 
 
 [32]
 Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 639, 32 S.Ct. 577, 579, 56 L.Ed. 924 (1912) (emphasis added)
 
 
 [33]
 Guaranty Trust Co. v. Blodgett, 287 U.S. 509, 53 S.Ct. 244, 77 L.Ed. 463 (1933); Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 32 S.Ct. 577, 56 L.Ed. 924 (1912); Murdock v. Memphis, 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875); Bacon v. Texas, 163 U.S. 207, 16 S.Ct. 1023, 41 L.Ed. 132 (1896)
 
 
 [34]
 368 F.Supp. at 1402, quoting Terre Haute & Indianapolis R.R. v. Indiana, 194 U.S. 579, 589, 24 S.Ct. 767, 48 L.Ed. 1124 (1904)
 
 
 [35]
 368 F.Supp. at 1404
 
 
 [36]
 For the same reason, that is, because no state statute is challenged, convening a three-judge court is not mandated under 28 U.S.C. §§ 2281--2284
 
 
 [37]
 Several decisions have considered an impairment of contract challenge to retroactive application of statutes protecting franchisees from termination. Superior Motors v. Winnebago Industries, Inc., 359 F.Supp. 773 (D.S.C.1973) (struck down); Willys Motors v. Northwest Kaiser-Willys, Inc., 142 F.Supp. 469 (D.Minn.1956) (upheld); Globe Liquors Co. v. Four Roses Distillers Co., 281 A.2d 19 (Del.S.Ct.), cert. denied 404 U.S. 873, 92 S.Ct. 103, 30 L.Ed.2d 117 (1971) (struck down); Warner-Lambert Co. v. Santarella, No. 0--72--106 (S.Ct.P.R., May 9, 1973) (struck down)
 
 
 [38]
 See Consumers Oil Corp. of Trenton v. Phillips Petroleum Co., 488 F.2d 816, 819 n. 2 (3d Cir. 1973); Fornaris v. Ridge Tool Co., 423 F.2d 563 (1st Cir.), rev'd per curiam on other grounds, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970)
 
 
 [39]
 Shell also contends that the New Jersey rule constitutes a burden on interstate commerce. Like the due process claim, in the absence of an adequately developed record this issue may not properly be reached
 
 
 [40]
 Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine; 122 U.Pa.L.Rev. 1071 (1974)
 
 
 [41]
 Wisconsin v. Constantineau, 400 U.S. 433 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). See Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)
 
 
 [42]
 Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970) (Puerto Rico Franchise Act); Consumers Oil Corp. of Trenton v. Phillips Petroleum Co., 488 F.2d 816 (3d Cir. 1973) (New Jersey Franchise Practices Act); AFA Distrib'g Co. v. Pearl Brewing Co., 470 F.2d 1210 (4th Cir. 1973) (Virginia statute)